2012 Ark. App. 461

**Teddy OVERTURFF, Appellant**

v.

**James A. READ, Mary Read, Clarence A. Conwell, Jr., Jane Conwell, Petrohawk Properties, LP & Western Land Services, Inc., Appellees.**

No. CA 12–67.

Court of Appeals of Arkansas.

Sept. 5, 2012.

Law Office of Kent Tester, P.A., Clinton, by: Kent Tester, for appellant.

Morgan Law Firm, P.A., by: M. Edward Morgan, Clinton, for appellees.

DAVID M. GLOVER, Judge.

This case evolves from a real-estate contract entered into in October 2002 by appellees—James Read, Mary Read, Clarence Conwell, and Jane Conwell—and appellant Teddy Overturff. The appeal must be dismissed because there is no final, appealable order.

*Real–Estate Contract*

The real-estate contract provided that Overturff would purchase the land over 180 months; that upon execution of the

contract, the Reads and Conwells would deliver a properly executed warranty deed to the escrow agent, who would hold the deed; and, that upon Overturff's completion of the contract, the escrow agent would provide the deed to Overturff or, in the event of default, would return the deed to the sellers. The contract provided that Overturff was awarded immediate right of possession to the property upon execution of the contract, but that he would not sell, assign, sublet, or otherwise convey his interest in the contract or mortgage or otherwise encumber the property or make any transfer of his equity or rights therein, without written consent of the Reads and Conwells first being obtained.

In September 2005, while Overturff was still making payments on the property, the Reads and Conwells entered into an oil-and-gas lease on the property with Western Land Services, Inc., for an initial period of five years; the lease provided, in part, for a one-sixth royalty payment, a one-time damage payment of $5,000 for each well drilled and $10 per rod for all access roads and/or pipelines constructed on the leased property, as well as possible shut-in royalty payments. Furthermore, the lease provided that it could be extended, at Western's option, for an additional five years for an extension payment of $250 per acre. The lease was entered into without the consent or knowledge of Overturff.

*Pleadings and Motions*

In February 2009, Overturff filed a complaint against the Reads and Conwells, Western Land Services, and Petrohawk Properties, LP.[1] In the complaint, Overturff alleged that he was the contract purchaser of the property; that in 2005, while payment was pending, the Reads and Conwells entered into an oil-and-gas lease on the property with Western Land; that the Reads and Conwells received payment for this lease but failed to give him credit toward the purchase of the property; that Western Land knew or should have known of the pending real-estate contract, ignored those contractual obligations, and interfered with the obligations by obtaining the lease and recording it, knowing of the likely consequence of encumbering the title to Overturff's property; and that by executing the oil-and-gas lease and encumbering the property, including limiting damages for drill sites and pipelines, the Reads and Conwells breached the real-estate contract and breached the warranties of the deed. Overturff requested judgment against the defendants, jointly and severally, for interference with his contract rights and warranties contained in the deed, claimed entitlement to an order striking the encumbrance created by the oil-and-gas lease, and alleged that any interest claimed by Petrohawk should be quieted in his favor. Overturff further alleged that the Reads and Conwells breached actual and implied covenants not to encumber or impede the title to his mineral estate, causing him to be damaged by having to receive a reduced royalty rate below the lease rate integrated by the Arkansas Oil and Gas Commission.

The Reads and Conwells filed an answer to Overturff's complaint and a cross-claim against Western Land in March 2009. They alleged in the cross-claim that Western Land represented that it would research the title of each property covered under the lease, determine if it had been subject to any real-estate sales contract previously entered, and exclude any property from the lease that was subject to a real-estate contract; that Western Land had a duty to ensure that each property in the lease was not encumbered by a real-estate contract; and that Western Land

---

1. Western Land assigned the oil-and-gas lease     to Petrohawk.

falsely represented that it had researched the property and determined that it was not encumbered by a real-estate contract, thereby inducing the Reads and Conwells to rely upon those representations in signing the lease.

In its answer, Western Land alleged that it was a bona fide purchaser, that the oil-and-gas lease should be upheld, and that the lease had priority over the real-estate contract alleged in Overturff's complaint. Petrohawk alleged that the lease should be upheld and have priority over Overturff's interest, as it was a bona fide purchaser and its receipt of the assignment of the lease had priority over Overturff's real-estate contract.

Overturff amended his complaint in May 2009, incorporating all of the allegations and averments of his original complaint and alleging that he suffered further damages in the form of reduced royalties; that the Reads' and Conwells' actions of leasing the mineral rights after execution of the escrow contract breached the implied covenants of good faith and fair dealing, which was the proximate cause of Overturff's damages; and that the Reads' and Conwells' leasing of the mineral rights and their conscious disregard for his contractual rights was an intentional interference with Overturff's right to lease his mineral interests by impairing title when it was reasonably foreseeable that their lease would interfere with Overturff's ability to lease the mineral rights. Overturff further alleged that the Reads and Conwells had committed fraud and usury by collecting illegal interest and not crediting him with the lease bonuses paid. Overturff provided proof that he paid off the real-estate contract and filed the warranty deed in October 2007 by attaching the recorded deed to his amended complaint. As to Western Land and Petrohawk, Overturff alleged that he was in actual, open, and notorious possession of the property; that such possession was sufficient to show that Western Land and Petrohawk were not innocent purchasers for value; that Western Land and Petrohawk were made aware and were on notice by both the words and actions of the Reads and Conwells and Overturff's actual possession of the property; and that the oil-and-gas lease should be declared null and void.

In November 2009, Western Land and Petrohawk filed a counterclaim against Overturff, alleging that at the time the oil-and-gas lease was entered into with the Reads and Conwells, the real-estate contract was not filed of record, and therefore Western Land had no record notice of the real-estate contract; and because there was no actual or record notice, Western Land was a bona fide purchaser, the lease was valid, and the lease had priority over the real-estate contract. The counterclaim further alleged that the real-estate contract was not of record at the time the lease was assigned to Petrohawk, and because there was no actual or record notice, Petrohawk was also a bona fide purchaser.

In January 2010, Western Land and Petrohawk filed a cross-claim against the Reads and Conwells, alleging that the oil-and-gas lease provided that the Reads and Conwells warranted and agreed to defend title to the leased property and that the cross-defendants had not yet resolved the title dispute or offered a defense to Western Land and Petrohawk. Western Land and Petrohawk contended that if Overturff prevailed on his claim, the Reads and Conwells would have breached the warranty of title provision and would be liable to Western Land and Petrohawk for damages.

In April 2010, the Reads and Conwells filed a motion for summary judgment; Western Land and Petrohawk filed a motion to adopt the motion as their own. In August 2011, Western Land and Petrohawk filed a separate motion for summary

judgment, arguing that in a related action, *Harbour v. Read,* (Case No. 2008–258),[2] the trial court had ruled upon the same facts and legal issues regarding the alleged liability of Western Land and Petrohawk; and that pursuant to stare decisis, Western Land and Petrohawk were entitled to have judgment entered in their favor and be absolved of any liability. In support of their separate motion, Western Land and Petrohawk relied upon the affidavits that were submitted in *Harbour v. Read,* which dealt with a different lease between different parties—there were no new affidavits addressing the lease involved in this case. The Reads and Conwells resisted this motion, arguing that the *Harbour* case was factually dissimilar to the present case because here, Western Land agreed to examine the escrow contracts and ensure that the lease did not encumber certain property, and that Western Land caused the breach when it misrepresented that it had completed this task. Furthermore, the Reads and Conwells contended that the present case involved facts that ⌊7should have put Western Land on actual notice of the ongoing escrow contract because there was an obvious use of the property by other people. Overturff also resisted Western Land and Petrohawk's summary judgment motion, arguing that the decision in *Harbour v. Read* should not bind him because he was not a party to that case and because the facts of the present case were different from those in the *Harbour* case.

### Order

No evidence was taken on these motions. The trial court entered its order on November 4, 2011. The body of the opinion and order provided, in pertinent part:

While the Plaintiff was making his payments as outlined in the contract, separate Defendants Conwell and Read executed and delivered an Oil and Gas Release to Western Land Services, predecessor in interest to Petrohawk Properties, LP. Although Defendants received payment for this lease, they failed to give the Plaintiff any credit toward the purchase of their property. There is no evidence that the Defendants either asked or received the permission of the Plaintiff to sell the mineral rights to the property that he was under contract to deliver a Warranty Deed for.

Defendants Read and Conwell claim that they did not breach the Real Estate Sales Contract because title does not transfer to the Plaintiff until they [sic] finish paying off the installments.

As this Court has previously addressed in Harbour v. Read, a sister case, Western Land Services, as a Bona-fide Purchaser for Value, is protected from any attempt to nullify the contract; however, the Defendants should not have deeded or leased the mineral rights during the course of the land-installment contract because the contract was in escrow. Because the Plaintiff has not yet fully paid for the ⌊8property,[3] the money for the mineral leases is not theirs; however, if and when the Plaintiff makes the last installment payment, the Defendants shall pay to him the value received for the mineral lease with Western Land Services. If the Plaintiff does not make the last payment and instead defaults, then the Defendants shall keep the mon-

---

**2.** This was another case involving an oil-and-gas lease that had been before the circuit court dealing with different parties, a separate tract of land, and a different lease.

**3.** The trial court's finding that Overturff had not yet fully paid for the property is erroneous—Overturff provided proof that he paid off the real-estate contract and filed the warranty deed in October 2007 by attaching the recorded deed to his amended complaint.

ey for the mineral lease. The exact amount paid to the Defendants from Western Land Services for the mineral lease shall be placed in an escrow account in Van Buren County until either of these contingencies is reached.

Overturff filed a notice of appeal on November 7, 2011. On appeal, he argues that the trial court erred in awarding damages on summary judgment; that the amount of damages awarded was wholly inadequate; and that the trial court erred in not allowing his claims for intentional tort of interference with a contract and for fraud to proceed to trial. We must dismiss this appeal because it is not a final, appealable order.

### Discussion

 "An order that fails to adjudicate all of the claims as to all of the parties, whether presented as claims, counterclaims, cross-claims, or third-party claims, is not final for purposes of appeal." *Office of Child Support Enforcement v. Willis,* 341 Ark. 378, 380, 17 S.W.3d 85, 87 (2000). Here, it appears that the trial court's order granted summary judgment to Overturff on a breach-of-contract theory and to Western Land/Petrohawk on a bona fide-purchaser theory.[4] However, at least two of Overturff's |9claims—intentional tort of interference with a contract and fraud—were not ruled upon and constitute two of his arguments on his attempted appeal. Furthermore, the trial court did not specifically make rulings on the two cross-claims or the counterclaim or dismiss those claims. Because these claims remain outstanding, this is not a final, appealable order.

There is a second reason that this order is not a final, appealable order. To be final, an order "must be of such a nature as to not only decide the rights of the parties, but also to put the court's directive into execution, ending the litigation or a separable part of it." *Lee v. Konkel–Swaim,* 73 Ark. App. 429, 430, 43 S.W.3d 767, 769 (2001). The order appealed from does not set forth a sum certain due to Overturff[5] from the Reads and Conwells—only that they should pay to Overturff the value received for the mineral lease with Western Land Services. This does not put the trial court's directive into execution, as there is no sum certain stated that is owed to Overturff.

Appeal dismissed.

WYNNE and BROWN, JJ., agree.

---

4. We note that Overturff has never filed a motion for summary judgment. Furthermore, Western Land/Petrohawk's summary judgment was granted on affidavits from a separate, unrelated case.

5. As discussed above, although the order is drafted in contingent terms, which would also prevent the order from being final and appealable, in reality there is no contingency, as Overturff provided the filed warranty deed indicating that he had paid the real-estate contract in full.