SLIP OPINION

Cite as 2014 Ark. 276

# SUPREME COURT OF ARKANSAS

No. CV–13–976

| | |
|---|---|
| THE BALLARD GROUP, INC.<br>APPELLANT | **Opinion Delivered** June 19, 2014 |
| V. | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. CV-2012-2197-4] |
| BP LUBRICANTS USA, INC., AND TRACY CURTIS KING<br>APPELLEES | HONORABLE JOHN R. SCOTT, JUDGE |
| | <u>AFFIRMED IN PART; REVERSED AND REMANDED IN PART</u>. |

### DONALD L. CORBIN, Associate Justice

Appellant, The Ballard Group, Inc. (Ballard), appeals the second amended order of the Benton County Circuit Court dismissing with prejudice its first amended complaint against Appellees, Tracy Curtis King (King) and her employer BP Lubricants USA, Inc. (BP), for failure to state a claim upon which relief could be granted. For reversal, Ballard contends that the circuit court erroneously granted the dismissal because its first amended complaint sufficiently pleaded claims for breach of contract, misappropriation of trade secrets, tortious interference with a contract and business expectancy, and civil conspiracy. In addition, Ballard contends that any dismissal granted should have been without prejudice. The Arkansas Court of Appeals certified this case as one involving a significant question of law concerning the interpretation of a court rule, specifically the two–dismissal component of Rule 41(b) of the Arkansas Rules of Civil Procedure. Jurisdiction is therefore properly in this

court pursuant to Arkansas Supreme Court Rule 1-2(b)(5) and (d) (2013). We affirm that part of the second amended order dismissing with prejudice the breach-of-contract claim, and we reverse and remand the parts of the order dismissing with prejudice the claims relating to trade secrets, tortious interference, and civil conspiracy.

## I. *Procedural History*

Appellant initiated the present litigation by filing a complaint against King and BP that alleged four causes of action: breach of contract, misappropriation of trade secrets, tortious interference with a contract and with a business expectancy, and civil conspiracy. The complaint described Ballard as a marketing firm, which for over twenty-five years had provided marketing services, such as the planning and executing of promotional and educational events for customers, employees, and vendors of Wal–Mart at various Wal–Mart Stores. The complaint referenced a marketing event known as the "Smart Driver Tour," which was designed to promote various automotive products that were manufactured or distributed by Wal–Mart vendors described as "Tour Sponsors," such as Meguiar's, Michelin, BP, and JCI/Everstart. The complaint alleged that, in addition to the Smart Driver Tour, which was classified as a Primary Event, there was an additional Primary Event known as the Wal–Mart Vendor Fair, and that these two Primary Events accounted for a substantial portion of Ballard's annual business. The complaint also alleged that significant additional business routinely occurred every year from additional and supplemental promotions known as "Spinoff Events" that were assigned as a matter of routine practice to the firm servicing the Primary Events. According to the complaint, Ballard had a series of contracts with BP for

these marketing events, and Ballard attached as exhibits to the complaint written contracts for the years 2008 and 2009.

The gist of the complaint was that King, at all times acting within the scope of her employment at BP, designed and executed a nepotistical plan in which her brother, Jason Curtis (Curtis), would be employed by Ballard, obtain Ballard's trade secrets and proprietary information, and then use that information to begin working at Threads Production, Inc. (Threads), which was a new company formed with King's influence to employ King's brother and her husband and to compete with Ballard for the business of BP and other vendors. Threads and Curtis are not parties to this case, although the complaint does allege that in separate litigation Ballard obtained a preliminary injunction to restrain Curtis from misappropriating trade secrets.

King and BP jointly filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure, asserting that Ballard had failed to plead facts upon which relief could be granted against either BP or King. King and BP argued that Ballard's complaint consisted primarily of legal conclusions rather than specific facts. The circuit court entered an order granting the motion to dismiss on all four causes of action and giving Ballard thirty days to file an amended complaint. The circuit court later entered an "Order to Reinstate," declaring that the court's intent in issuing the previous order of dismissal was to allow the matter to remain open until the thirty days for Ballard to file an amended complaint had expired.

Ballard timely filed a first amended complaint asserting the same four causes of action and pleading additional facts. BP and King filed a motion to dismiss the first amended complaint pursuant to Rule 12(b)(6), noting that the first amended complaint was substantially the same as the original complaint because it stated primarily legal conclusions rather than specific facts from which a jury could find for Ballard on any of its claims. The circuit court entered an order granting the motion to dismiss all four causes of action based on its failure to plead sufficient facts upon which relief could be granted. The order did not state whether the dismissal was to be with or without prejudice.

Ballard then filed a motion to clarify or correct the order to reflect that the dismissal would be without prejudice and for Ballard to plead further and file a second amended complaint within thirty days. The circuit court entered an order, essentially granting Ballard's request to clarify. This order was dated July 15, 2013, and stated that the Rule 12(b)(6) dismissal of the first amended complaint was being granted without prejudice for Ballard to plead further by August 12, 2013.

BP and King then filed a motion for reconsideration of the July 15 order, arguing that the July 15 order was a second dismissal and therefore should have been granted with prejudice pursuant to the "two-dismissal" rule in Rule 41(b). The circuit court then entered a "Second Amended Order Granting Motion to Dismiss" dated August 2, 2013, essentially granting BP's motion for reconsideration and then reflecting that the July 15 order was to be a dismissal with prejudice pursuant to Rule 12(b)(6) and Rule 41(b).

SLIP OPINION

Ballard filed a motion for reconsideration of the second amended order, which the circuit court denied by written order. This appeal followed.

Ballard presents two points on appeal. First, Ballard challenges the circuit court's determination that the second Rule 12(b)(6) dismissal was subject to the two-dismissal component of Rule 41(b). Second, Ballard challenges the merits of the circuit court's ruling on the motion to dismiss pursuant to Rule 12(b)(6). We address the merits of the Rule 12(b)(6) dismissal first, because if we determine that the dismissal was erroneously granted, then there would be only one dismissal and any opinion expressed on the two-dismissal rule would be advisory. If, however, we determine that the circuit court correctly decided the merits of the Rule 12(b)(6) dismissal, then there would arguably be two dismissals, and we would then need to address Ballard's argument concerning the two-dismissal rule.

## II. *Standard of Review*

Generally speaking, the granting of both a Rule 12(b)(6) dismissal and a Rule 41(b) dismissal are reviewed under the abuse-of-discretion standard. *J.B. Hunt, LLC v. Thornton*, 2014 Ark. 62, ___ S.W.3d ___ (Rule 12(b)(6)); *Jonesboro Healthcare Ctr., LLC v. Eaton-Moery Envtl. Servs., Inc.*, 2011 Ark. 501, 385 S.W.3d 797 (Rule 41(b)). However, when this court must construe a court rule, our appellate review is de novo. *Jonesboro Healthcare Ctr.*, 2011 Ark. 501, 385 SW.3d 797. Thus, in this case, we must determine whether the circuit court abused its discretion in dismissing the complaint; if it did not, then we determine whether the circuit court erred in applying the two-dismissal rule as expressed in Rule 41(b).

SLIP OPINION

III. *The Merits of the Rule 12(b)(6) Dismissal*

In determining whether the circuit court abused its discretion in dismissing Ballard's complaint pursuant to Rule 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *J.B. Hunt*, 2014 Ark. 62, ___ S.W.3d ___. We construe the pleadings liberally and resolve all reasonable inferences in favor of the complaint. *Id.* This court has summarized the requirements for pleading facts as follows:

> Arkansas has adopted a clear standard to require fact pleading: "a pleading which sets forth a claim for relief . . . shall contain (1) a statement in ordinary and concise language of facts showing that the pleader is entitled to relief . . ." ARCP Rule 8(a)(1). Rule 12(b)(6) provides for the dismissal of a complaint for "failure to state facts upon which relief can be granted." This court has stated that these two rules must be read together in testing the sufficiency of the complaint; facts, not mere conclusions, must be alleged. In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and pleadings are to be liberally construed. *Id.*; ARCP Rule 8(f).

*Brown v. Tucker*, 330 Ark. 435, 438, 954 S.W.2d 262, 264 (1997) (citation omitted) (quoting *Malone v. Trans-States Lines, Inc.*, 325 Ark. 383, 386, 926 S.W.2d 659, 661 (1996) (quoting *Hollingsworth v. First Nat'l Bank & Trust Co.*, 311 Ark. 637, 639, 846 S.W.2d 176, 178 (1993))). This court's rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. Ark. R. Civ. P. 8(a) (2013); *Perry v. Baptist Health*, 358 Ark. 238, 189 S.W.3d 54 (2004). The court will look to the underlying facts supporting an alleged cause of action to determine whether the matter has been sufficiently pled. *Id.* Where the complaint states only conclusions without facts, we will affirm the trial court's decision to dismiss the complaint pursuant to Rule 12(b)(6). *Brown*, 330 Ark. 435, 954 S.W.2d 262.

SLIP OPINION

There are four causes of action at issue here, and we address them individually, as did the circuit court.

## A. Breach of Contract

In its first dismissal order, the circuit court found that neither of the written contracts attached to Ballard's complaint as Exhibits 4 and 5 bound BP for the year 2010. The circuit court noted that Exhibit 4 plainly and unambiguously did not obligate BP for any period of time beyond 2008 and then concluded that, "In the absence of a valid and enforceable contract, Ballard's contract claim against BP and King must be dismissed." In its second amended order, the circuit court noted that Ballard had alleged that parol evidence in the form of course of dealing and industry practice would show that a three-year commitment is customary in the industry. However, the circuit court ruled that the 2008 and 2009 contracts were unambiguous, and therefore parol evidence would be inadmissible. The circuit court ultimately concluded that "the breach of contract claim fails as it did in [Ballard's] original Complaint. . . . [and] is dismissed."

The circuit court's ruling on this claim was correct. Exhibit 4 binds BP and Ballard for the year 2008. It does have a provision to make it binding for three years "[b]y signing a three-year commitment" at the end of the contract, but that provision is left blank and is not signed. Exhibit 5 is for the year 2009. Because the first amended complaint alleges that BP was required to employ Ballard for the "2010 Primary Events or the 2010 Smart Driver Tour," 2010 is the operative year for the breach–of–contract claim. Generally, to state a cause of action for breach of contract the complaint need only assert the existence of a valid and

SLIP OPINION

enforceable contract between the plaintiff and defendant, the obligation of defendant thereunder, a violation by the defendant, and damages resulting to plaintiff from the breach. *Perry*, 358 Ark. 238, 189 S.W.3d 54. The circuit court cited *Perry*, and concluded that Ballard had not pleaded a valid and enforceable contract for 2010, the year the alleged breach occurred. We agree. The first amended complaint simply does not contain facts upon which a breach-of-contract claim could be granted, and that part of the circuit court's order dismissing the contract claim is affirmed.

### B. Misappropriation of Trade Secrets

We next consider Ballard's claim for violation of the Arkansas Trade Secrets Act (the Act), Arkansas Code Annotated sections 4-75-601 to -607 (Repl. 2011). We note that the circuit court did not rule that Ballard failed to allege the existence of any trade secrets as defined in the Act. Rather, the circuit court ruled that "[t]he complaint fails to allege that King or BP acquired, disclosed, or used Ballard's trade secrets."

The Act provides that actual or threatened misappropriation of a trade secret may be enjoined. Ark. Code Ann. § 4-75-604. "Misappropriation" is defined in the Act as follows:

(2) "Misappropriation" means:

    (A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

    (B) Disclosure or use of a trade secret of another without express or implied consent by a person who:

        (i) Used improper means to acquire knowledge of the trade secret; or

(ii) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

    *(a)* Derived from or through a person who had utilized improper means to acquire it;

    *(b)* Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

    *(c)* Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Ark. Code Ann. § 4-75-601(2). This court has cited subsection (2)(B) of this definition and stated that "[m]isappropriation of a trade secret includes use of a trade secret taken by another." *Pro-Comp Mgmt., Inc. v. R.K. Enters., LLC*, 366 Ark. 463, 469, 237 S.W.3d 20, 25 (2006).

As we are required to do when testing the sufficiency of a complaint, we look to Ballard's first amended complaint, which contains the following specific allegations. For the convenience of the reader, we also recite allegations that are relevant to our later discussion of Ballard's other causes of action for tortious interference and civil conspiracy:

16. Jason Curtis was hired by Plaintiff Ballard Group on or about October 1, 2007, at the request of his sister, Defendant Tracy Curtis King. After his hire, he was entrusted at the suggestion of Defendants with the task and purpose of working on Primary Events, Spinoff Events and Derivative Events by among other things, using the methods, algorithms and other trade secrets of Plaintiff Ballard Group to analyze and prepare the budgeting and scheduling of current events and to develop new events to offer to Plaintiff Ballard Group's client base . . . .

17. Before he was hired by Plaintiff Ballard Group, Jason Curtis . . . had no prior work experience servicing Wal-Mart or Wal-Mart vendors. All information that was received by Jason Curtis regarding the Primary Events, Spinoff Events and Derivative Events was due solely to his employment by Plaintiff Ballard Group. The information received by Jason Curtis was not known outside Plaintiff Ballard Group, and specifically was not known by Jason Curtis who had to be trained and educated regarding this information and the processes and methods by which to use the information by Plaintiff Ballard Group through a lengthy series of meetings, supervised trips and tutorial sessions, at significant expense to Plaintiff Ballard Group.

18. Before Jason Curtis was hired by Plaintiff Ballard Group, and before he was entrusted with any of the confidential information or trade secrets . . . Curtis was required to execute a Non-Compete/Non-Disclosure Agreement. A true and correct copy of this contract is attached hereto as Exhibit 1.

19. These non-disclosure and non-compete terms were repeatedly and consistently renewed and supplemented each year that Jason Curtis worked for Plaintiff Ballard Group.

20. . . . [T]rue and correct cop[ies] of th[ese] Agreement[s are] attached hereto as Exhibit 2.

21. . . . [and] as Exhibit 3.

. . . .

23. As part of his work, Jason Curtis regularly dealt with executives and principals of Plaintiff Ballard Group and its clients, including but not limited to Defendant BP Lubricants USA, Inc., and other Tour Sponsors. . . .

. . . .

31. . . . Threads Productions, Inc., exists solely due to the actions of Defendant Tracy Curtis King, and is merely a "funnel" for money to her family members, to the injury of Plaintiff Ballard Group.

32. . . . [T]he non–disclosure and non–competition terms of the Agreement applying to Jason Curtis . . . . w[ere] made known to Keesha Akins,[1] [and] these terms were actively discussed between Jason Curtis and Keesha Akins and others, including Defendant Tracy Curtis King, in or about September 2007. . . .

. . . .

34. . . . This information was also independently made known to Defendants no later than October 2009, when it was again disclosed to Defendants during conversations with Defendant Tracy Curtis King.  Defendants were further apprised of these restrictions during bankruptcy proceedings [of Jason Curtis] in April 2010 and when the Preliminary Injunction was issued in July 2010. . . .

. . . .

36.   The misappropriation of trade secrets by Jason Curtis was enjoined by a Temporary Restraining Order and Preliminary Injunction entered on July 7, 2010, in *The Ballard Group, Inc. v. Jason Curtis*, No. CV-2010-2167-2 (Benton C[nty]. Cir. Ct.).  This order was known to the Defendants within days of its entry.

. . . .

42. . . . Defendant Tracy Curtis King's husband also was hired away from Plaintiff Ballard Group to work for Threads Productions, Inc., in addition to her brother, Jason Curtis.

43. . . . .

(a) . . . King, stopped by the office of Keesha Akins in person and covertly solicited the bid by Threads Productions, Inc., in September or October 2009, even before that entity was formed;

(b) . . . King, personally assisted Keesha Akins in preparing the details of the bid by Threads Productions, Inc.;

(c) . . . King, actively and personally discussed and encouraged Jason Curtis and other employees of Plaintiff Ballard Group, including but not limited to Shane Akins,

---

[1]Elsewhere in the first amended complaint, Keesha Akins was alleged to have supervised and controlled all relevant actions of Threads Productions, Inc.

Phillip Easley, and her husband (Robert King) to seek employment with Threads Productions, Inc., on at least two occasions during 2009;

(d) Defendant BP Lubricants USA, Inc., by and through Defendant Tracy Curtis King, contracted with Threads Productions, Inc., for the Primary Events through a collusive and anti-competitive bid process which concealed the fact that the per event costs, normally the predominant factor in deciding whom to award a contract, were $1298.08 per event with Threads Productions, Inc., and cheaper, at $1142.31 per event with Plaintiff Ballard Group, which was the low bidder due to the competitive advantages resulting from its trade secrets and confidential information. As a result, the Defendants' anti-competitive actions were not based upon business judgment, and actually increased the costs to Tour sponsors as a result of Defendant Tracy Curtis King's nepotistic motives which gave Threads Productions, Inc., an unfair trade advantage in its competition with Plaintiff Ballard Group, Inc.;

. . .

(f) Defendants, Jason Curtis, Keesha Akins, Threads Productions, Inc., and others obtained and diverted the Tour after having been given a specific dollar amount for bid by Defendant Tracy Curtis King who worked for Defendant BP Lubricants USA, Inc., in a position that gave her effective control of the business;

. . .

(i) . . . King, actively promoted Threads Productions, Inc., and encouraged other Tour Sponsors to cease communication with Plaintiff Ballard Group . . . ;

(j) . . . [and] provided false and misleading information regarding Plaintiff Ballard Group, to other Tour Sponsors thereby inducing them to cease doing business with Plaintiff Ballard Group and do business instead with Threads Productions, Inc., in a further nepotistic effort to promote Threads Productions, Inc., for the benefit of the family members of Defendant Tracy Curtis King, and to conceal the Defendants' anti-competitive and collusive activities in restraint of trade.

. . . .

45. As a result, Defendants have also misappropriated Plaintiff Ballard Group's trade secrets and other confidential information by inducing breach of the Agreements by Jason Curtis, who has breached the confidentiality and non-competition terms of the Agreements, and by inducing breach of contract by Defendant BP Lubricants

SLIP OPINION

USA, Inc., and by actively inducing the other Tour Sponsors to cease doing business with Plaintiff Ballard Group through specific communications as described herein.

46. Defendants have misappropriated Plaintiff Ballard Group's trade secrets and other confidential information by taking the actions described herein which individually and collectively constitute using these trade secrets which Defendants, by and through Defendant Tracy Curtis King, had reason to know were derived from or through a person who had utilized improper means to acquire the trade secrets, to wit, Jason Curtis and Threads Productions, Inc.

In ruling that Ballard's first amended "complaint faile[d] to allege that King or BP had acquired, disclosed, or used" Ballard's trade secrets, the circuit court observed that, according to the complaint, it was Jason Curtis who misappropriated Ballard's trade secrets to Threads, but Threads is not a defendant in this case. While that is true, this ruling stops short of recognizing other allegations in the complaint, such as that in September 2007, prior to Jason Curtis being hired at Threads, that King and Curtis had met with Keesha Akins to discuss the non-compete and non-disclosure agreement that Curtis had made with Ballard; or that in September or October 2009, King and Threads, armed with the knowledge that was protected in the non-compete/non-disclosure agreement, colluded and conspired to prepare and submit a bid from Threads that falsely appeared to underbid Ballard. Construing these and the foregoing allegations liberally and resolving all inferences in favor of the complaint as we are required to do, we conclude that these allegations state facts that King, acting within the scope of her employment with BP, used the trade secrets that her brother Curtis had acquired at Ballard to help Threads prepare a bid on behalf of Threads to compete with Ballard. Given our statement in *Pro-Comp Mgmt.*, 366 Ark. 463, 237 S.W.3d 20, that misappropriation of a trade secret includes use of a trade secret taken by another, we conclude

that Ballard has sufficiently stated a cause of action for violation of the Arkansas Trade Secrets Act.

In sum, the foregoing portions of the first amended complaint constitute specific events and conversations occurring on at least three different occasions in 2007, 2009, and 2010 to support Ballard's allegation that King and BP acquired and used Ballard's trade secrets to formulate and prepare a bid to divert BP's business from Ballard to Threads. Whether Ballard can produce evidence to prove these alleged facts remains to be determined later in these proceedings; however, the foregoing allegations describe particular events in sufficient detail to state a cause of action for misappropriation of trade secrets. Accordingly, we conclude that the circuit court abused its discretion is dismissing the trade-secrets cause of action for failure to allege facts that BP "acquired, disclosed or used" Ballard's trade secrets.

## C. Tortious Interference

We turn now to Ballard's claim of tortious interference with a contract and business expectancy. The elements of tortious interference are (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Brown*, 330 Ark. 435, 954 S.W.2d 262; *Mason v. Funderburk*, 247 Ark. 521, 446 S.W.2d 543 (1969). A fifth requirement has been added by this court: the conduct of the defendant must be "improper." *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 959, 69 S.W.3d 393, 405 (2002). In addition to the above, another

essential element of a tortious-interference-with-contractual-relations claim is that there must be some third party involved. *Id.*

In the present case, the circuit court's second amended order concluded that, "[b]ecause there is not a valid contractual relationship or business expectancy, and a party cannot interfere with its own contract, facts are not stated upon which relief can be granted, and [Ballard's] tortious interference claim is dismissed." This would be a correct ruling if the basis of Ballard's claim was the alleged contract between Ballard and BP. *See Faulkner*, 347 Ark. 941, 69 S.W.3d 393 (stating that a party to a contract and its employees and agents, acting within the scope of their authority, cannot be held liable for interfering with the party's own contract). But this ruling stops short of correctly identifying the contracts and expectancies that Ballard alleged King and BP had interfered with. The first amended complaint clearly states, "The interests with which the Defendants' actions interfered were well established contract rights between Plaintiff Ballard Group and Jason Curtis and Plaintiff Ballard Group's legitimate business expectancies based upon lengthy business relationships and agreement with the Tour Sponsors."

The circuit court abused its discretion here by overlooking Ballard's allegations that the contract that King and BP interfered with was the non-compete/non-disclosure agreement between Ballard and Jason Curtis. The circuit court's second amended order did not consider that such agreements or contracts existed despite the fact that there were three of them attached to Ballard's complaint. Curtis executed one of these agreements every year for the years 2007–2009, and they were attached to the complaint as Exhibits 1-3. Ballard's

first amended complaint alleged that King and BP "discussed and encouraged Jason Curtis . . . to seek employment with Threads . . . on at least two occasions during 2009." This allegation, when considered with the allegations previously recited in our consideration of Ballard's trade-secrets claim, sufficiently pleads facts to state a claim for tortious interference with a contract, and the circuit court abused its discretion in overlooking this aspect of Ballard's tortious-interference claim.

As for the claim that King and BP tortiously interfered with Ballard's contracts and business expectancies with other Tour Sponsors, the first amended complaint alleges that King "actively instruct[ed] Tour Sponsors to terminate communications with [Ballard] in order to cement and preserve the unfair anti-competitive advantage" gained by Threads. The first amended complaint also alleged that King, while actively promoting Threads, provided false and misleading information regarding Ballard to other Tour Sponsors, thereby inducing them to cease doing business with Ballard and to start doing business instead with Threads. The first amended complaint gives specific allegations of each 2010 Tour Event that Ballard claims it lost to Threads. There are seven specific events named and itemized (e.g., Primary Event on or about May 31–June 3, 2010, at 2010 Shareholder Meeting; and Spinoff Event at "October Road Show" on or about October 7–14, 2010), and a total of roughly $375,000 is alleged in lost expected revenue to Ballard. Other Tour Sponsors identified with these enumerated events include Michelin, Everstart, and Meguiar's. Clearly then, Ballard's first amended complaint recited certain events alleged to have happened at particular times that, when considered together with the allegations previously recited in our consideration of

16

SLIP OPINION

Ballard's trade-secrets claim, sufficiently plead facts to state a claim for tortious interference with a business expectancy, and the circuit court abused its discretion in overlooking this additional aspect of Ballard's tortious-interference claim.

In sum, the circuit court's ruling that there was not a valid contract or business expectancy alleged because there was not a valid contract between Ballard and BP overlooked the other allegations in the complaint concerning the agreement between Ballard and Curtis and Ballard's business expectancies with the other Tour Sponsors. When considered with the allegations previously discussed with respect to the trade-secrets claim, the three signed non-compete/non-disclosure agreements between Ballard and Curtis attached to the complaint suffice to allege a claim of BP's tortious interference with a contract, and the enumeration of the seven specific events that Ballard claims it lost to Threads are sufficient to allege a claim of tortious interference with a business expectancy. We therefore conclude that the circuit court abused its discretion in dismissing the cause of action for tortious interference with a contract and business expectancy.

## D. Civil Conspiracy

The circuit court ruled that, because Ballard's contract, trade secrets, and tortious-interference claims had been dismissed as a matter of law, Ballard could not state a claim for civil conspiracy. To prove a civil conspiracy, a plaintiff must show that two or more persons have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive or immoral, but by unlawful, oppressive or immoral means, to the injury of another. *Faulkner*, 347 Ark. 941, 69 S.W.3d 393. A civil conspiracy

is not actionable in and of itself, but a recovery may be had for damages caused by acts committed pursuant to the conspiracy. *Id.* A civil conspiracy is an intentional tort that requires a specific intent to accomplish the contemplated wrong. *Id.* Based on this law, then, because we are reversing the dismissal of the underlying claims of tortious interference and misappropriation of trade secrets, we also reverse the dismissal of the civil-conspiracy claim. *See Se. Distrib. Co. v. Miller Brewing Co.*, 366 Ark. 560, 237 S.W.3d 63 (2006) (reversing summary judgment on civil-conspiracy claim due to reversal of summary judgment on underlying claims for tortious interference and violation of two statutes).

IV. <em>Rule 41(b)—The Two-Dismissal Rule</em>

Because we have concluded that the claim for breach of contract was properly dismissed pursuant to Rule 12(b)(6), we must now address Ballard's argument that the second dismissal with prejudice is reversible error and should be modified to reflect a dismissal without prejudice. Ballard contends that the second amended order's dismissal with prejudice is contrary to the explicit text of Rule 41(b), which refers to a dismissal being without prejudice to a future action. King and BP respond that the second amended order was a second dismissal and therefore the circuit court correctly applied the two-dismissal rule found in Rule 41(b) such that the second dismissal was properly with prejudice.

Stated in its most basic form, the issue here presented is whether two Rule 12(b)(6) dismissals, the second of which is granted after the plaintiff has been given the opportunity to plead further under Rule 12(j), combine to trigger the two-dismissal rule in Rule 41(b). We conclude that the answer is yes. This means that, on the facts here presented, the circuit court

was correct in concluding that the second Rule 12(b)(6) dismissal of Ballard's claim for breach of contract was a dismissal with prejudice.

Our analysis begins with the principle that when a dismissal pursuant to Rule 12(b)(6) is granted because the complaint is determined to be factually insufficient, then it is improper for such a dismissal to be granted with prejudice and without leave to plead further pursuant to Rule 12(j).  *See, e.g.*, *Matter of Poston*, 318 Ark. 659, 887 S.W.2d 520 (1994); *see also Hubbard v. Shores Grp., Inc.*, 313 Ark. 498, 855 S.W.2d 924 (1993).  This is because "[i]t is well-settled that such a dismissal is to be without prejudice so that the plaintiff may elect whether to plead further or appeal."  *Malone*, 325 Ark. at 386, 926 S.W.2d at 661.  But it is also well settled that "there is a limit to the number of times a case can be dismissed," regardless of whether the dismissals are voluntary or involuntary.  *See Bakker v. Ralston*, 326 Ark. 575, 579, 932 S.W.2d 325, 327 (1996) (citing Ark. R. Civ. P. 41 rep. nn.).

Continuing our analysis with a reading of Rule 41(b), we see that the rule provides as follows:

> *(b) Involuntary Dismissal.*  In any case in which there has been a failure of the plaintiff to comply with these rules or any order of court or in which there has been no action shown on the record for the past 12 months, the court shall cause notice to be mailed to the attorneys of record, and to any party not represented by an attorney, that the case will be dismissed for want of prosecution unless on a stated day application is made, upon a showing of good cause, to continue the case on the court's docket.  A dismissal under this subdivision is without prejudice to a future action by the plaintiff unless the action has been previously dismissed, whether voluntarily or involuntarily, in which event such dismissal operates as an adjudication on the merits.

Ark. R. Civ. P. 41(b) (2013).

19

This court has noted that a failure to comply with the requirements of Arkansas Rule of Civil Procedure 4 regarding the issuance and service of a summons is a "failure of the plaintiff to comply with these rules" as contemplated in Rule 41(b) and that a dismissal granted for such failure to properly serve a summons under Rule 12(b)(5) constitutes an involuntary dismissal under Rule 41(b). *Bakker*, 326 Ark. at 579, 932 S.W.2d at 327. By the same reasoning, a failure to comply with the requirements of Arkansas Rule of Civil Procedure 8 for pleading facts is likewise a "failure of the plaintiff to comply with these rules" as contemplated in Rule 41(b); thus, a dismissal granted for failure to state facts upon which relief can be granted under Rule 12(b)(6) constitutes an involuntary dismissal under Rule 41(b).

In *Brown*, 330 Ark. 435, 954 S.W.2d 262, this court applied Rule 41(b) and the principle announced in *Bakker*, 326 Ark. 575, 932 S.W.2d 325, and modified a Rule 12(b)(6) dismissal to one with prejudice when it was subsequent to a prior dismissal due to a voluntary nonsuit. In *Middleton v. Lockhart*, 344 Ark. 572, 43 S.W.3d 113 (2001), however, this court declined to apply *Brown* where two Rule 12(b)(6) dismissals had been granted in the absence of a voluntary nonsuit. In so doing, this court noted in *Middleton* that Rule 41(b) was not applicable because not all the causes of action alleged had been dismissed twice. Unlike *Middleton*, the present case involves two Rule 12(b)(6) dismissals granted on the same four causes of action alleged against the same party defendants. The facts in *Middleton* are therefore so distinguished from the facts of the present case that *Middleton* simply does not apply here.

Keeping in mind that the operation of Rule 41(b)'s two-dismissal rule is invoked when two dismissals have been granted, "whether voluntarily or involuntarily," we return then to the principle applied in *Brown* that, for purposes of calculating the two dismissals subject to Rule 41(b), an involuntary dismissal under Rule 12(b)(6) counts as a second dismissal. Based on *Brown*, we therefore conclude that an involuntary dismissal under Rule 12(b)(6) may also constitute a first dismissal when calculating the two dismissals subject to Rule 41(b). Applying the plain language of Rule 41(b), we hold that when a first Rule 12(b)(6) dismissal is granted with an opportunity to plead further under Rule 12(j), and a second Rule 12(b)(6) dismissal is suffered on the same claims after the attempt to plead further, then by operation of the two-dismissal component of Rule 41(b), the second Rule 12(b)(6) dismissal is with prejudice and operates as an adjudication on the merits. Our holding that two Rule 12(b)(6) involuntary dismissals combine to trigger the two-dismissal component of Rule 41(b) gives effect to both the purpose of Rule 12(j) in allowing a trial court to exercise its discretion to allow a plaintiff to plead further "if appropriate" and the purpose of Rule 41(b) to limit the number of times a case can be dismissed "whether voluntarily or involuntarily." Ark. R. Civ. P. 12(j); Ark. R. Civ. P. 41(b). Under Rule 12(j), a trial court has the discretion to allow further pleading "if appropriate." Regardless of the number of times a complaint is amended, however, a complaint may be dismissed only twice pursuant to Rule 41(b).

## V. *Conclusion*

The circuit court correctly dismissed Ballard's claim for breach of contract pursuant to Rule 12(b)(6) due to Ballard's failure to plead a valid and enforceable contract. Because the

21

circuit court had previously dismissed the contract claim based on Rule 12(b)(6) and had allowed Ballard the opportunity to further plead the claim, the second dismissal was properly granted with prejudice by operation of Rule 41(b). That part of the circuit court's second amended order dismissing Ballard's contract claim is therefore affirmed.

The circuit court, however, abused its discretion in overlooking specific allegations of fact in the first amended complaint and in dismissing the remaining trade-secrets, tortious-interference, and civil-conspiracy claims. When the allegations of these remaining claims in Ballard's first amended complaint are construed liberally and all inferences are resolved in favor of the complaint, they go beyond mere conclusions and sufficiently state facts upon which relief could be granted. Whether Ballard can ultimately produce evidence to prove these alleged facts remains to be determined. However, the first amended complaint relates particular actions and events alleged to have been taken at certain times that sufficiently state a cause of action for misappropriation of trade secrets, tortious interference, and civil conspiracy. Stating facts upon which relief can be granted is all that is required at this point in this case. The parts of the circuit court's second amended order dismissing the claims concerning trade secrets, tortious interference, and civil conspiracy are accordingly reversed and remanded for further proceedings.

Affirmed in part; reversed and remanded in part.

HANNAH, C.J., and HART, J., dissent.

**JIM HANNAH, Chief Justice, dissenting.** I respectfully dissent from that portion of the majority opinion holding that Arkansas Rule of Civil Procedure 41(b) applies to two

dismissals under Arkansas Rule of Civil Procedure 12(b)(6). Rule 41(b) was intended to permit trial courts to clean up their dockets and get stale cases dismissed where the plaintiff fails to prosecute, fails to comply with rules, or fails to comply with any order of the court. *Cory v. Mark Twain Life Ins. Corp.*, 286 Ark. 20, 22, 688 S.W.2d 934, 935 (1985). Likening Arkansas Rule of Civil Procedure 8 to Arkansas Rule of Civil Procedure 4 regarding service of process, the majority concludes that "a failure to comply with the requirements of Arkansas Rule of Civil Procedure 8 for pleading facts is likewise a 'failure of the plaintiff to comply with these rules' as contemplated in rule 41(b)". I disagree.

First, I do not agree that a failed attempt by a plaintiff to state "in ordinary and concise language. . .facts showing. . .that the pleader is entitled to relief (Arkansas Rule of Civil Procedure 8(a)) constitutes a "failure of the plaintiff to comply with these rules" under rule 41(b). Second, I do not believe that the analogy to Rule 4 is helpful because Rule 4 sets out very specific tasks to be completed for service of process, and stating a cause of action is an issue governed by Rule 12, not Rule 41. Arkansas Rule of Civil Procedure 12(j) grants the trial court the discretion to permit further pleading, which clearly means that Rule 41(b) is not applicable to dismissals under Rule 12. Nothing in this case indicates that the plaintiff was not prosecuting the case or that any rules of civil procedure subject to Rule 41 were being violated. The majority improperly and unnecessarily limits the discretion of the trial courts to handle pleading issues. On this basis, I respectfully dissent.

HART, J., joins.

The Kester Law Firm, by: *Charles M. Kester*; and *Kelley Law Firm*, by: *Glenn E. Kelley*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Christopher Heller, Tory H. Lewis*, and *R. Christopher Lawson*, for appellees.