SLIP OPINION

Cite as 2014 Ark. App. 473

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-14-232

| | |
|---|---|
| TEDDY OVERTURFF <br><br> APPELLANT <br><br> V. <br><br><br> JAMES A. READ, MARY READ, CLARENCE A. CONWELL, JR., JANE CONWELL, PETROHAWK PROPERTIES, LP, and WESTERN LAND SERVICES, INC. <br><br> APPELLEES | **Opinion Delivered** SEPTEMBER 17, 2014 <br><br> APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT [NO. CV-09-66] <br><br> HONORABLE MICHAEL A. MAGGIO, JUDGE <br><br> AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**DAVID M. GLOVER, Judge**

On September 5, 2012, we dismissed this appeal because the order was not final and appealable. After our opinion was handed down, the trial court entered a new order on December 31, 2013, which specified the amount of damages appellees, as sellers, were ordered to pay and dismissed buyer Teddy Overturff's "claims for intentional tort of interference with a contract and fraud, as well as all cross-claims and counterclaims." The December 31 order corrected the finality problems noted in our first opinion; we now have jurisdiction to hear this appeal. We affirm in part and reverse and remand in part. The background information provided in our original opinion will be recounted here.

SLIP OPINION

*Factual Background*

Appellant, Teddy Overturff, and appellees, James Read, Mary Read, Clarence Conwell, and Jane Conwell, entered into a real-estate contract for the sale of certain land on October 22, 2002. The term of the agreement was 180 months, at which time the warranty deed, which was held by an escrow agent, would be delivered to Overturff. In September 2005, the Reads and Conwells entered into an oil–and–gas lease with Western Land Services, Inc., that included the property covered by the real-estate contract. Overturff was making his payments, was in no way in default, had no knowledge of the lease, and did not give his consent to it. The terms of the lease provided in part that there would be an initial period of five years, with a one-sixth royalty payment, a one-time damages payment of $5,000 for each well drilled, and $10 per rod for all access roads and/or pipelines constructed on the leased property, with possible shut-in royalty payments. The lease also provided that, at Western's option, it could be extended for an additional five years with an extension payment of $250 per acre. Western Land eventually assigned the lease to Petrohawk Properties.

*Procedural Background*

Overturff filed a complaint against the Reads, Conwells, Western Land Services, and Petrohawk Properties in February 2009, alleging in part that the Reads and Conwells breached the real-estate contract and the deed warranties by encumbering the property with the execution of the oil-and-gas lease and limiting the damages for drill sites and pipelines, and that Western Land knew or should have known of the pending real-estate contract yet

2

interfered with the contractual obligations by obtaining the lease, recording it, and thereby encumbering the title.

The Reads and Conwells answered Overturff's complaint and filed a cross-claim against Western Land, alleging basically that Western Land had represented to them that it would research the title of each property covered by the lease and exclude any property from it that was subject to a real-estate contract. Western Land answered the complaint, alleging that it was a bona-fide purchaser, that the lease should be upheld, and that it had priority over the real-estate contract. Petrohawk answered, asserting that the lease should be upheld and have priority over Overturff's interest because Petrohawk was a bona-fide purchaser and its receipt of the assignment of the lease had priority over Overturff's real-estate contract.

Overturff subsequently amended his complaint, incorporated the original complaint, and made the further allegations that he had suffered additional damages in the form of reduced royalties, that the Reads' and Conwells' lease breached the implied covenants of good faith and fair dealing, and that their leasing of the mineral rights and conscious disregard of his contractual rights was an intentional interference with his right to lease his mineral interests by impairing the title. He also alleged that the Reads and Conwells had committed fraud and usury. He provided proof that he had paid off the real-estate contract by attaching his recorded deed. With respect to Western Land and Petrohawk, Overturff alleged that he was in actual, open, and notorious possession of the property and that his possession was sufficient to show that Western Land and Petrohawk were not innocent purchasers for value; that those entities had notice; and that the lease should be declared null and void.

3

SLIP OPINION

Western Land and Petrohawk subsequently counterclaimed against Overturff, alleging that at the time the lease was entered, the real-estate contract was not filed of record; that they had no record notice of the contract; and that because there was no actual or record notice, Western Land was a bona-fide purchaser, the lease was valid, and it had priority over the real-estate contract. The counterclaim further asserted that the contract was not of record at the time the lease was assigned to Petrohawk, making it a bona-fide purchaser as well.

In January 2010, Western Land and Petrohawk filed a cross-claim against the Reads and Conwells, alleging that they had warranted and agreed to defend title to the leased property and that if Overturff prevailed on his claim, the Reads and Conwells would have breached the warranty of title and would be liable to Western Land and Petrohawk for damages.

The Reads and Conwells filed a motion for summary judgment in April 2010; Western Land and Petrohawk then filed a motion to adopt it as their own. In August 2011, Western Land and Petrohawk filed a separate motion for summary judgment in which they argued that in the earlier related action of *Harbour v. Read*, Case No. 2008-258, the trial court had absolved them of liability on the same facts and legal issues. They relied upon affidavits submitted in *Harbour*, which dealt with a different lease and different parties. They submitted no new affidavits. The Reads and Conwells resisted the motion, contending that the facts in *Harbour* differed because, in the instant case, Western Land had agreed to examine the escrow contracts and ensure that the lease did not encumber certain property, but then

misrepresented that it had completed the task when it had not. The Reads and Conwells further contended that facts in the instant case should have put Western Land on actual notice of the real-estate contract because there was obvious use of the property by other people. Overturff also resisted the motion, arguing that *Harbour* should not bind him because he was not a party to that case, and the facts in it differed from those in the instant case.

In its original November 4, 2011 order, the trial court briefly concluded that the Reads and Conwells should not have leased the mineral rights during the course of the land-installment contract; that Western Land Services was "protected from any attempt to nullify the contract" because it was a bona-fide purchaser for value; that the "Defendants shall pay to [Overturff] the value received for the mineral lease with Western Land Services" when the property was fully paid for [which it had been]; and that the "exact amount" paid for the mineral lease was to be placed in an escrow account until either the property was paid for or Overturff defaulted. Overturff filed his notice of appeal from the November 4 order on November 7, 2011. In the September 5, 2012 opinion, our court dismissed the appeal because the November 4 order was not final and appealable:

> Here, it appears that the trial court's order granted summary judgment to Overturff on a breach-of-contract theory and to Western Land/Petrohawk on a bona-fide-purchaser theory. However, at least two of Overturff's claims—intentional tort of interference with a contract and fraud—were not ruled upon and constitute two of his arguments on his attempted appeal. Furthermore, the trial court did not specifically make rulings on the two cross-claims or the counterclaim or dismiss those claims. Because these claims remain outstanding, this is not a final, appealable order.
>
> There is a second reason that this order is not a final, appealable order. To be final, an order "must be of such a nature as to not only decide the rights of the parties, but also to put the court's directive into execution, ending the litigation or a separable part of it." The order appealed from does not set forth a sum certain due to Overturff

5

from the Reads and Conwells—only that they should pay to Overturff the value received for the mineral lease with Western Land Services. This does not put the trial court's directive into execution, as there is no sum certain stated that is owed to Overturff.

*Harbour v. Read*, 2012 Ark. App. 461, at 8–9, 422 S.W.3d 143, 147 (citations omitted) (footnotes omitted).

The trial court entered its second order on December 31, 2013, providing in pertinent part:

> As this Court has previously addressed in *Harbour v. Read*, a sister case, Western Land Services, as a Bona Fide Purchaser for Value is protected from any attempt to nullify the contract; however, the Defendants should not have deeded or leased the mineral rights during the course of the land installment contract because the contract was in escrow. Because the Plaintiff has now fully paid for the property, he is entitled to the money paid for the mineral lease. The Defendants are hereby ordered to pay to Plaintiff the value received for the mineral lease with Western Land Services which was $225/acre for twenty-five (25) acres.
>
> Plaintiff's claims for the intentional tort of interference with a contract and fraud, as well as all cross-claims and counterclaims, are hereby dismissed.

The trial court offered no explanation for its dismissal of Overturff's claims for intentional interference with a contract and fraud.

Overturff filed his notice of appeal from the December 31 order on January 7, 2014, and that appeal is currently before us. He challenges the trial court's decision by arguing that the trial court 1) erred in awarding damages on summary judgment, 2) did not apply the correct measure of damages to his breach-of-contract claims, 3) erred in dismissing his claim for the intentional tort of interference with a contract in granting summary judgment and 4) erred in dismissing Overturff's claim for fraud in granting summary judgment. We affirm in part and reverse in part.

6

SLIP OPINION

*Summary Judgment Standard of Review*

In *Lipsey v. Karen*, 2014 Ark. 309, at 5–6, \_\_\_S.W.3d \_\_\_, \_\_\_, our supreme court

set out the standard of review for summary judgment:

> Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Koch*, *supra*. On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Gentry v. Robinson*, 2009 Ark. 634, 361 S.W.3d 788. This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Kyzar v. City of W. Memphis*, 360 Ark. 454, 201 S.W.3d 923 (2005). Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, 422 S.W.3d 116. While we have recognized that summary judgment is simply one of the tools in a trial court's efficiency arsenal, we only approve the granting of the motion when the state of the evidence as portrayed by the pleadings, affidavits, discovery responses, and admissions on file is such that the nonmoving party is not entitled to a day in court, i.e., when there is not any genuine remaining issue of fact and the moving party is entitled to judgment as a matter of law. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). Moreover, we have held that, even when there is no material dispute as to the facts, the court will determine whether "reasonable minds" could draw "reasonable" inconsistent hypotheses to render summary judgment inappropriate. In other words, when the facts are not at issue but possible inferences therefrom are, the court will consider whether those inferences can be reasonably drawn from the undisputed facts and whether reasonable minds might differ on those hypotheses. *Id*. If so, summary judgment is not appropriate.

I. and II.

Overturff's first two points deal with the breach-of-contract damages awarded by the

trial court. They can best be discussed together. The trial court awarded Overturff $250 an

acre times twenty-five acres, which was the amount paid by Western Land to the Reads and

Conwells. Briefly, he argues that damages recoverable from breach of contract are those

damages that would place the injured party in the same position as if the contract had not

been breached, and that a party injured by a breach of contract is entitled to recover its expectancy, i.e., that which it would have received or gained if the other party had carried out the contract. In responding to the motion for summary judgment, Overturff presented evidence that the section in which his property was located had been integrated pursuant to an Arkansas Oil and Gas Commission order and that unleased owners had the option of leasing their mineral interests for $750 an acre and a 1/5 royalty, participating in the well, or electing to be a non consenting party. Thus, Overturff demonstrated that a question of fact remained concerning how much he is owed in damages for the sellers' breach of the land-sale contract. We therefore reverse and remand this portion of the trial court's grant of summary judgment.

### III.

For his third point of appeal, Overturff contends that the trial court erred in dismissing his claim that the Reads and Conwells interfered with his rights to enter an oil-and-gas lease with a third party once he completed payment for the property. We disagree.

The elements of tortious interference with a contract or business expectancy are 1) the existence of a valid contractual relationship or a business expectancy, 2) knowledge of the relationship or expectancy on the part of the interfering party, 3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and 4) resultant damage to the party whose relationship or expectancy has been disrupted. *The Ballard Group, Inc. v. BP Lubricants USA, Inc.*, 2014 Ark. 276, ___ S.W.3d ___. In addition, the defendants' conduct must be "improper," and there must be some third party involved.

SLIP OPINION

*Id.* The expectancy that is obstructed must be precise, and it must be sufficiently concrete in order to qualify as a business expectancy and survive summary dismissal. *See Skalla v. Canepari*, 2013 Ark. 415, 430 S.W.3d 72.

Here, Overturff contends that he had a legitimate business expectancy that his mineral rights would be unimpaired once he finished paying for the land, that he would be free to lease or obtain the benefits of an oil–and–gas lease on his land, and that, but for the appellees' intentional acts in leasing the mineral rights on the land that he was purchasing from them, he would have reaped the benefit and not suffered damages.

We affirm the trial court's dismissal of this claim because Overturff's business expectancy was not shown to be sufficiently precise or concrete. Even though the mineral lease arose after the land-sale contract had been executed, and the sellers did not retain mineral rights in the property, did not consult Overturff prior to entering the mineral lease, and were warned by a real-estate agent that they did not have the right to do so, no concrete, precise expectancy between Overturff and any mineral-leasing entity was demonstrated.

IV.

For his final point of appeal, Overturff contends that the trial court erred in dismissing his claim for fraud without allowing it to proceed to trial. We disagree.

The five elements of the tort of fraud are 1) a false representation of a material fact, 2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation, 3) intent to induce action or inaction in reliance upon the

representation, 4) justifiable reliance on the representation, and 5) damage suffered as a result of the reliance. *Wal-Mart Stores, Inc. v. Coughlin*, 369 Ark. 365, 255 S.W.3d 424 (2007).

As the factual basis for his claim, Overturff relies upon appellees' receipt of the mineral "lease bonus" without giving Overturff credit toward his purchase price. The problem with his position is that he never established that a false representation of a material fact was ever made by the appellees. Without satisfying that first element, his claim for fraud fails.

Affirmed in part; reversed and remanded in part.

WALMSLEY and VAUGHT, JJ., agree.

*Tester Law Firm, P.A.*, by: *Kent Tester*, for appellant.

*Morgan Law Firm, P.A.*, by: *M. Edward Morgan*, for appellees.